JENNIFER CABAN,

     Plaintiff,

v.

                              CASE NO.:

FIRST CONTACT, LLC, ALORICA, INC.,
AND iENERGIZER HOLDINGS LIMITED,

     Defendant.

_____/

## COMPLAINT

1.     Unwanted "Robocalls" are the #1 consumer complaint in America today.

2.     The people complaining about harassing robocalls is increasing at an alarming rate. In 2015, 2,125,968 complained to the Federal Trade Commission (FTC) and Federal Communications Commission (FCC), in 2016 this number was 3,401,614 2016 and in 2017 it was 4,501,967.[1]

3.     First Contact, LLC, Alorica, Inc., and iEnergizer Holdings Limited robocalled the Plaintiff a mindboggling 450 times.

4.     First Contact, LLC, Alorica, Inc., and iEnergizer Holdings Limited has a corporate policy to robocall people thousands of times.

5.     "Senator Hollings, the TCPA's sponsor, described these calls as 'the scourge of modern civilization.  They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall.' 137 Cong. Rec. 30, 821 (1991).  Senator Hollings presumably intended to give telephone

---

[1] It is important to recognize these merely reflect the number of individuals that complained to these agencies; the number of people that have been victimized by illegal robocalling abuse could be close to 100,000,000 in the last 3 years

subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm Bank*, F.S.B., 746 F. 3d 1242, 1256 (11th Cir. 2014).  Despite the penalties put in place over 26 years ago, robocall abuse continues to skyrocket.

6.      Plaintiff, Jennifer Caban, alleges Defendants, First Contact, LLC, Alorica, Inc., and iEnergizer Holdings Limited robocalled her more than 450 times in stark violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA"), the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et. seq.* ("FDCPA"), the Florida Consumer Collection Practices Act, Fla. Stat. § 559.55 *et seq.* ("FCCPA"), Invasion of Privacy ("IOP"), and Intentional Infliction of Emotional Distress ("IIED").

7.      Robocalls are very inexpensive to make.  As was noted in a Senate hearing on the subject: "With such a cheap and scalable business model, bad actors can blast literally tens of millions of illegal robocalls over the course of a single day at less than 1 cent per minute." *Stopping Fraudulent Robocall Scams: Can More Be Done?: Hearing Before the Subcomm. on Consumer Prot., Prod. Safety, and Ins. of the S. Comm. on Commerce, Sci., and Transp.*, 113 Cong. 113-117 (2013) (statement of Lois Greisman, Assoc. Director, Division of Marketing Practices, Bureau of Consumer Protection, Federal Trade Commission).

8.      The TCPA was enacted to prevent companies like First Contact, LLC, Alorica, Inc., and iEnergizer Holdings Limited from invading American citizens' privacy and prevent illegal robocalls.

9.      Congress enacted the TCPA to prevent real harm.  Congress found that "automated or pre-recorded calls are a nuisance and an invasion of privacy, regardless of the type of call" and decided that "banning" such calls made without consent was "the only effective means of protecting telephone consumers from this nuisance and privacy invasion." Pub. L. No. 102-243,

§§ 2(10-13) (Dec. 20, 1991), codified at 47 U.S.C. § 227; *see also Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012) ("The Act bans certain practices invasive of privacy").

10.     According to findings by the FCC—the agency Congress vested with authority to issue regulations implementing the TCPA—such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.  The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.

## JURISDICTION AND VENUE

11.     Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. §1331.

12.     Violations described in the Complaint occurred while Plaintiff was in Englewood, Florida.

## FACTUAL ALLEGATIONS REGARDING FIRST CONTACT, LLC

13.     Plaintiff is a natural person and citizen of the State of Florida, residing in Englewood, Florida.

14.     Plaintiff is a "consumer" as defined in Florida Statute § 559.55(8) 15 U.S.C. § 1692(a)(3).

15.     Plaintiff is an "alleged debtor."

16.     Plaintiff is the "called party." *See Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014); *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 (11th Cir. 2014).

17.     Defendant First Contact, LLC is a Minnesota limited liability company with its registered office address in St. Paul, Minnesota, and its principal executive office in St. Petersburg, Florida, First Contact, LLC regularly conducts business in Florida.

18.     Defendant First Contact, LLC is a "debt collector" as defined by Florida Statute § 559.55(7) and 15 U.S.C. § 1692(a)(6).

19.     The debt that is the subject matter of this complaint is a "consumer debt" as defined by Florida Statute § 559.55(6) and 15 U.S.C. § 1692(a)(5).

20.     Plaintiff is the regular user and carrier of the cellular telephone number at issue, (941) 249-1792.

21.     Plaintiff was the "called party" during each phone call subject to this lawsuit.

22.     Defendant First Contact, LLC intentionally harassed and abused Plaintiff on numerous occasions by calling several times during one day, and on back to back days, with such frequency as can reasonably be expected to harass.

23.     Defendant First Contact, LLC did not have the "express consent" of the Defendant First Contact, LLC to call her cell phone.

24.     "Express consent" is narrowly construed by the Courts.

25.     It is the Defendant First Contact, LLC's burden to prove they had "express consent" per the TCPA to call the Plaintiff on her cell phone using an "automatic telephone dialing system" (ATDS).

26.     It is the Defendant First Contact, LLC's burden to prove they had "express consent" per the TCPA to call the Plaintiff on her cell phone using an ATDS for each account they were calling on.

27.     Defendant First Contact, LLC was put on notice Plaintiff did not want the Defendant First Contact, LLC contacting her.

28.     Defendant First Contact, LLC did not have the express consent of the Plaintiff to call her on the accounts they called her.

29.     Plaintiff expressly revoked any express consent Defendant First Contact, LLC may have mistakenly believed it had for placement of telephone calls to Plaintiff's aforementioned cellular telephone number by the use of an ATDS or a pre-recorded or artificial voice.

30.     Defendant First Contact, LLC attempted to collect a debt from the Plaintiff by this campaign of telephone calls.

31.     Defendant First Contact, LLC made at least one call to (941) 249-1792.

32.     Defendant First Contact, LLC made at least one call to (941) 249-1792 using an ATDS.

33.     Defendant First Contact, LLC made at least ten (10) calls to (941) 249-1792.

34.     Defendant First Contact, LLC made at least ten (10) calls to (941) 249-1792 using an ATDS.

35.     Defendant First Contact, LLC made at least fifty (50) calls to (941) 249-1792.

36.     Defendant First Contact, LLC made at least fifty (50) calls to (941) 249-1792 using an ATDS.

37.     Defendant First Contact, LLCmade at least one-hundred fifty (150) calls to (941) 249-1792.

38.     Defendant First Contact, LLC made at least one-hundred fifty (150) calls to (941) 249-1792 using an ATDS.

39.     Each call the Defendant First Contact, LLC made to (941) 249-1792 in the last four years was made using an ATDS.

40.     Each call the Defendant First Contact, LLC made to the Plaintiff's cell phone was done so without the "express permission" of the Plaintiff.

41.     Defendant First Contact, LLC has called other people's cell phones without their express consent.

42.     Each call the Defendant First Contact, LLC made to the Plaintiff was made using an ATDS, which has the capacity to store or produce telephone numbers to be called, without human intervention, using a random or sequential number generator; and to dial such numbers as specified by 47 U.S.C § 227(a)(1).

43.     The calls at issue were placed by the Defendant First Contact, LLC using a "prerecorded voice," as specified by the TCPA, 47 U.S.C. § 227(b)(1)(A).

44.     Plaintiff repeatedly requested the Defendant First Contact, LLC to stop calling her cell phone, however, the Defendant First Contact, LLC continued to make calls.

45.     Defendant First Contact, LLC has admitted to calling cell phones using an ATDS after that person asked for the calls to stop.

46.     Plaintiff's conversations with the Defendant First Contact, LLC putting them on notice that they did not want more phone calls were ignored.

47.     Defendant First Contact, LLC has recorded at least one conversation with the Plaintiff.

48.     Defendant First Contact, LLC has recorded numerous conversations with the Plaintiff.

49.     Defendant First Contact LLC has made approximately one-hundred fifty (150) calls to Plaintiff's aforementioned cellular telephone number from about August 16, 2015 through October 17, 2015,        which will be established exactly once Defendant First Contact, LLC turns over their dialer records.

50.     Despite actual knowledge of their wrongdoing, the Defendant First Contact, LLC continued the campaign of abusive robocalls.

51.     Defendant First Contact, LLC has been sued in federal court where the allegations include: calling an individual using an ATDS after the individual asked for the calls to stop.

52.     By effectuating these unlawful phone calls, Defendant First Contact, LLC has caused Plaintiff the very harm that Congress sought to prevent—namely, a "nuisance and invasion of privacy."

53.     Defendant First Contact, LLC's aggravating and annoying phone calls trespassed upon and interfered with Plaintiff's rights and interests in her cellular telephone and cellular telephone line, by intruding upon Plaintiff's seclusion.

54.     Defendant First Contact, LLC's phone calls harmed Plaintiff by wasting her time.

55.     Moreover, "wireless customers [like Plaintiff] are charged for incoming calls whether they pay in advance or after the minutes are used."  In re: *Rules Implementing the TCPA of 1991*, 23 FCC Rcd 559, 562 (2007).  Defendant First Contact, LLC's phone calls harmed Plaintiff by depleting the battery life on her cellular telephone, and by using minutes allocated to Plaintiff by her cellular telephone service provider.

56.     Defendant First Contact, LLC's corporate policy and procedures are structured as to continue to call individuals like the Plaintiff, despite these individuals revoking any consent the Defendant First Contact, LLC may have mistakenly believed it had.

7

57.     Defendant First Contact, LLC's corporate policy and procedures provided no means for the Plaintiff to have her aforementioned cellular number removed from the call list.

58.     Defendant First Contact, LLC has a corporate policy of using an ATDS or a prerecorded or artificial voice message to collect debts from individuals such as Plaintiff for its financial benefit.

59.     Plaintiff expressly revoked any consent Defendant First Contact, LLC may have mistakenly believed it had for placement of telephone calls to Plaintiff's aforementioned cellular telephone by the use of an ATDS or a pre-recorded or artificial voice immediately upon Defendant First Contact, LLC's placement of the calls.  Making money while breaking the law is considered an incentive to continue violating the TCPA and other state and federal statutes.

60.     Defendant First Contact, LLC never had the Plaintiff's expressed consent for placement of telephone calls to her aforementioned cellular telephone by the use of an ATDS or a pre-recorded or artificial voice.

61.     None of Defendant First Contact, LLC's telephone calls placed to Plaintiff were for "emergency purposes" as specified in 47 U.S.C. §227(b)(1)(A).

62.     Defendant First Contact, LLC violated the TCPA, FDCPA and FCCPA with respect to the Plaintiff.

63.     Defendant First Contact, LLC willfully or knowingly violated the TCPA with respect to the Plaintiff.

### COUNT I
### (Violation of the TCPA Against First Contact, LLC)

64.     Plaintiff incorporates Paragraphs one (1) through sixty-three (63).

65. Defendant First Contact, LLC willfully violated the TCPA with respect to the Plaintiff each time they called the Plaintiff after she revoked her consent to be called by them using an ATDS or pre-recorded voice.

66. Defendant First Contact, LLC knowingly violated the TCPA with respect to the Plaintiff, especially for each of the auto-dialed calls made to Plaintiff's cellular telephone after Plaintiff revoked her consent to be called by them using an ATDS or pre-recorded voice.

67. Defendant First Contact, LLC repeatedly placed non-emergency telephone calls to the wireless telephone number of Plaintiff using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

68. As a result of Defendant First Contact, LLC's illegal conduct, Plaintiff suffered actual damages and, under § 227(b)(3)(B), is entitled to, inter alia, a minimum of $500.00 in damages for each such violation of the TCPA.

69. Plaintiff is also entitled to, and does, seek injunctive relief prohibiting Defendant, First Contact, LLC, from violating the TCPA in the future.

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant First Contact, LLC for statutory damages, punitive damages, actual damages and any other such relief the court may deem just and proper.

### COUNT II
### (Violation of the FDCPA Against First Contact, LLC)

70. Plaintiff incorporates Paragraphs one (1) through sixty-three (63).

71. At all times relevant to this action, Defendant First Contact, LLC is subject to and must abide by 15 U.S.C. § 1692 *et seq.*

72.     Defendant First Contact, LLC engaged in an act or omission prohibited under 15 U.S.C. § 1692(d) by willfully engaging in conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.

73.      Defendant First Contact, LLC engaged in an act or omission prohibited under 15 U.S.C. § 1692(d)(5) by causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.

74.     Defendant First Contact, LLC engaged in an act or omission prohibited under 15 U.S.C. § 1692(f) by using unfair and unconscionable means to collect or attempt to collect any debt.

**WHEREFORE,** Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against for statutory damages, punitive damages, actual damages, costs, interest, attorney fees and any other such relief the court may deem just and proper.

### COUNT III
### (Violation of the FCCPA Against First Contact, LLC)

75.     Plaintiff incorporates Paragraphs one (1) through sixty-three (63).

76.     At all times relevant to this action Defendant First Contact, LLC is subject to and must abide by the law of Florida, including Florida Statute § 559.72.

77.     Defendant First Contact, LLC has violated Florida Statute § 559.72(7) by willfully communicating with the debtor or any member of her family with such frequency as can reasonably be expected to harass the debtor or her family.

78.     Defendant First Contact, LLC has violated Florida Statute § 559.72(7) by willfully engaging in other conduct which can reasonably be expected to abuse or harass the debtor or any member of her  family.

79.     Defendant First Contact, LLC has violated Florida Statute § 559.72(9) by attempting to enforce a debt when Defendant First Contact, LLC knows that the debt is not legitimate or assert the existence of some legal right when Defendant First Contact, LLC knows that right does not exist.

80.     Defendant First Contact, LLC's actions have directly and proximately resulted in Plaintiff's prior and continuous sustaining of damages as described by Florida Statute §559.77.

**WHEREFORE,** Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant First Contact, LLC for statutory damages, punitive damages, actual damages, costs, interest, attorney fees, enjoinder of future illegal conduct, and any other such relief the court may deem just and proper.

## COUNT IV
### (Invasion of Privacy – Intrusion Upon Seclusion Against First Contact, LLC)

81.     Plaintiff incorporates Paragraphs one (1) through sixty-three (63).

82.     Defendant First Contact, LLC through its collection conduct, has repeatedly and intentionally invaded Plaintiff's privacy.

83.     All of the calls made to Plaintiff's cell phone by Defendant First Contact LLC and its agents using an automatic telephone dialing system were made in violation of the TCPA, and were unreasonable and highly offensive invasions of Plaintiff's right to privacy.

84.     Defendant First Contact LLC's persistent autodialed calls to her cellular phone eliminated Plaintiff's right to be left alone.

85.     Defendant First Contact, LLC's autodialed collection calls disrupted Plaintiff's privacy, disrupted Plaintiff's sleep, disrupted Plaintiff during mealtimes, disrupted Plaintiff during her work, and continually frustrated and annoyed Plaintiff.

86.     These persistent autodialed collection calls eliminated the peace and solitude that the Plaintiff would have otherwise had in Plaintiff's home and anywhere else Plaintiff went with her cellular phone.

87.     By calling her cellular phone, Plaintiff had no escape from these collection calls either in her home or when she left the home.

88.     By persistently autodialing Plaintiff's cellular phone without prior express consent, Defendant First Contact, LLC invaded Plaintiff's right to privacy, as legally protected by the TCPA, and caused Plaintiff to suffer concrete and particularized harm.

89.     Defendant First Contact, LLC's harassing collection conduct and tactic of repeatedly auto dialing Plaintiff to her cellular phone after requests to stop is highly offensive to a reasonable person.

90.     Defendant First Contact, LLC intentionally intruded upon Plaintiff's solitude and seclusion.

91.     As a result of Defendant First Contact, LLC's action or inaction, Plaintiff has been damaged.

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant First Contact, LLC for statutory damages, punitive damages, actual damages and any other such relief the court may deem just and proper.

## <u>COUNT V</u>
### (Intentional Infliction of Emotional Distress Against First Contact, LLC)

92.     Plaintiff incorporates Paragraph one (1) through sixty-three (63).

93.     The harassing and abusive conduct, including the repetitive robocalls to Plaintiff, have caused severe emotional harm and distress, embarrassment, aggravation, and other losses.

94.     It is beyond the pale of decency to robocall anybody 150 times.

95. The damage to the Plaintiff was and is immense. The Plaintiff had a stunned sense of helplessness because she could not stop the calls.

96. To call somebody this amount of time is inhumane.

97. It is utterly uncivilized to robocall someone 150 times.

98. If a person called another person 150 times, the caller would most likely be in prison for criminal harassment.

99. This is especially true if the caller continued to make the calls after being told to stop and never had permission to call in the first place.

100. The calls to Plaintiff by Defendant First Contact, LLC are harassing, aggravating and highly intrusive.

**WHEREFORE,** Plaintiff respectfully requests that judgment be entered against Defendant First Contact, LLC for punitive damages and such other and further relief as the Court shall deem just and proper.

## FACTUAL ALLEGATIONS REGARDING iENERGIZER HOLDINGS LIMITED

101. Plaintiff is a natural person and citizen of the State of Florida, residing in Englewood, Florida.

102. Plaintiff is a "consumer" as defined in Florida Statute § 559.55(8) 15 U.S.C. § 1692(a)(3).

103. Plaintiff is an "alleged debtor."

104. Plaintiff is the "called party." *See Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014); *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 (11th Cir. 2014).

105. Defendant IEnergizer Holdings Limited is a corporation with its principal place of business in Noida, India, and regularly conducts business in Florida.

106. Defendant IEnergizer Holdings Limited is a "debt collector" as defined by Florida Statute § 559.55(7) and 15 U.S.C. § 1692(a)(6).

107. The debt that is the subject matter of this complaint is a "consumer debt" as defined by Florida Statute § 559.55(6) and 15 U.S.C. § 1692(a)(5).

108. Plaintiff is the regular user and carrier of the cellular telephone number at issue, (941) 249-1792.

109. Plaintiff was the "called party" during each phone call subject to this lawsuit.

110. Defendant IEnergizer Holdings Limited intentionally harassed and abused Plaintiff on numerous occasions by calling several times during one day, and on back to back days, with such frequency as can reasonably be expected to harass.

111. Defendant IEnergizer Holdings Limited did not have the "express consent" of the Defendant IEnergizer Holdings Limited to call her cell phone.

112. "Express consent" is narrowly construed by the Courts.

113. It is the Defendant IEnergizer Holdings Limited's burden to prove they had "express consent" per the TCPA to call the Plaintiff on her cell phone using an "automatic telephone dialing system" (ATDS).

114. It is the Defendant IEnergizer Holdings Limited's burden to prove they had "express consent" per the TCPA to call the Plaintiff on her cell phone using an ATDS for each account they were calling on.

115. Defendant IEnergizer Holdings Limited was put on notice Plaintiff did not want the Defendant IEnergizer Holdings Limited contacting her.

116. Defendant IEnergizer Holdings Limited did not have the express consent of the Plaintiff to call her on the accounts they called her.

14

117.    Plaintiff expressly revoked any express consent Defendant IEnergizer Holdings Limited may have mistakenly believed it had for placement of telephone calls to Plaintiff's aforementioned cellular telephone number by the use of an ATDS or a pre-recorded or artificial voice.

118.    Defendant IEnergizer Holdings Limited attempted to collect a debt from the Plaintiff by this campaign of telephone calls.

119.    Defendant IEnergizer Holdings Limited made at least one call to (941) 249-1792.

120.    Defendant IEnergizer Holdings Limited made at least one call to (941) 249-1792 using an ATDS.

121.    Defendant IEnergizer Holdings Limited made at least ten (10) calls to (941) 249-1792.

122.    Defendant IEnergizer Holdings Limited made at least ten (10) calls to (941) 249-1792 using an ATDS.

123.    Defendant IEnergizer Holdings Limited made at least fifty (50) calls to (941) 249-1792.

124.    Defendant IEnergizer Holdings Limited made at least fifty (50) calls to (941) 249-1792 using an ATDS.

125.    Defendant IEnergizer Holdings Limitedmade at least one-hundred fifty (150) calls to (941) 249-1792.

126.    Defendant IEnergizer Holdings Limited made at least one-hundred fifty (150) calls to (941) 249-1792 using an ATDS.

127.    Each call the Defendant IEnergizer Holdings Limited made to (941) 249-1792 in the last four years was made using an ATDS.

15

128.    Each call the Defendant IEnergizer Holdings Limited made to the Plaintiff's cell phone was done so without the "express permission" of the Plaintiff.

129.    Defendant IEnergizer Holdings Limited has called other people's cell phones without their express consent.

130.    Each call the Defendant IEnergizer Holdings Limited made to the Plaintiff was made using an ATDS, which has the capacity to store or produce telephone numbers to be called, without human intervention, using a random or sequential number generator; and to dial such numbers as specified by 47 U.S.C § 227(a)(1).

131.    The calls at issue were placed by the Defendant IEnergizer Holdings Limited using a "prerecorded voice," as specified by the TCPA, 47 U.S.C. § 227(b)(1)(A).

132.    Plaintiff repeatedly requested the Defendant IEnergizer Holdings Limited to stop calling her cell phone, however, the Defendant IEnergizer Holdings Limited continued to make calls.

133.    Defendant IEnergizer Holdings Limited has admitted to calling cell phones using an ATDS after that person asked for the calls to stop.

134.    Plaintiff's conversations with the Defendant IEnergizer Holdings Limited putting them on notice that they did not want more phone calls were ignored.

135.    Defendant IEnergizer Holdings Limited has recorded at least one conversation with the Plaintiff.

136.    Defendant IEnergizer Holdings Limited has recorded numerous conversations with the Plaintiff.

137.    Defendant IEnergizer Holdings Limited has made approximately one-hundred fifty (150) calls to Plaintiff's aforementioned cellular telephone number from about June 12, 2015

through July 30, 2015, which will be established exactly once Defendant IEnergizer Holdings Limited turns over their dialer records.

138.    Despite actual knowledge of their wrongdoing, the Defendant IEnergizer Holdings Limited continued the campaign of abusive robocalls.

139.    Defendant IEnergizer Holdings Limited has been sued in federal court where the allegations include: calling an individual using an ATDS after the individual asked for the calls to stop.

140.    By effectuating these unlawful phone calls, Defendant IEnergizer Holdings Limited has caused Plaintiff the very harm that Congress sought to prevent—namely, a "nuisance and invasion of privacy."

141.    Defendant IEnergizer Holdings Limited's aggravating and annoying phone calls trespassed upon and interfered with Plaintiff's rights and interests in her cellular telephone and cellular telephone line, by intruding upon Plaintiff's seclusion.

142.    Defendant IEnergizer Holdings Limited's phone calls harmed Plaintiff by wasting her time.

143.    Moreover, "wireless customers [like Plaintiff] are charged for incoming calls whether they pay in advance or after the minutes are used."  In re: *Rules Implementing the TCPA of 1991*, 23 FCC Rcd 559, 562 (2007).  Defendant IEnergizer Holdings Limited's phone calls harmed Plaintiff by depleting the battery life on her cellular telephone, and by using minutes allocated to Plaintiff by her cellular telephone service provider.

144.    Defendant IEnergizer Holdings Limited's corporate policy and procedures are structured as to continue to call individuals like the Plaintiff, despite these individuals revoking any consent the Defendant IEnergizer Holdings Limited may have mistakenly believed it had.

145.     Defendant IEnergizer Holdings Limited's corporate policy and procedures provided no means for the Plaintiff to have her aforementioned cellular number removed from the call list.

146.     Defendant IEnergizer Holdings Limited has a corporate policy of using an ATDS or a prerecorded or artificial voice message to collect debts from individuals such as Plaintiff for its financial benefit.

147.     Plaintiff expressly revoked any consent Defendant IEnergizer Holdings Limited may have mistakenly believed it had for placement of telephone calls to Plaintiff's aforementioned cellular telephone by the use of an ATDS or a pre-recorded or artificial voice immediately upon Defendant IEnergizer Holdings Limited's placement of the calls.  Making money while breaking the law is considered an incentive to continue violating the TCPA and other state and federal statutes.

148.     Defendant IEnergizer Holdings Limited never had the Plaintiff's expressed consent for placement of telephone calls to her aforementioned cellular telephone by the use of an ATDS or a pre-recorded or artificial voice.

149.     None of Defendant IEnergizer Holdings Limited's telephone calls placed to Plaintiff were for "emergency purposes" as specified in 47 U.S.C. §227(b)(1)(A).

150.     Defendant IEnergizer Holdings Limited violated the TCPA, FDCPA and FCCPA with respect to the Plaintiff.

151.     Defendant IEnergizer Holdings Limited willfully or knowingly violated the TCPA with respect to the Plaintiff.

## COUNT I
### (Violation of the TCPA Against IEnergizer Holdings Limited)

152.     Plaintiff incorporates Paragraphs one hundred one (101) through one hundred fifty one (151).

153.     Defendant IEnergizer Holdings Limited willfully violated the TCPA with respect to the Plaintiff each time they called the Plaintiff after she revoked her consent to be called by them using an ATDS or pre-recorded voice.

154.     Defendant IEnergizer Holdings Limited knowingly violated the TCPA with respect to the Plaintiff, especially for each of the auto-dialed calls made to Plaintiff's cellular telephone after Plaintiff revoked her consent to be called by them using an ATDS or pre-recorded voice.

155.     Defendant IEnergizer Holdings Limited repeatedly placed non-emergency telephone calls to the wireless telephone number of Plaintiff using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

156.     As a result of Defendant IEnergizer Holdings Limited's  illegal conduct, Plaintiff suffered actual damages and, under § 227(b)(3)(B), is entitled to, inter alia, a minimum of $500.00 in damages for each such violation of the TCPA.

157.     Plaintiff is also entitled to, and does, seek injunctive relief prohibiting Defendant, IEnergizer Holdings Limited, from violating the TCPA in the future.

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant IEnergizer Holdings Limited for statutory damages, punitive damages, actual damages and any other such relief the court may deem just and proper.

## COUNT II
### (Violation of the FDCPA Against IEnergizer Holdings Limited)

158. Plaintiff incorporates Paragraphs one hundred one (101) through one hundred fifty one (151).

159. At all times relevant to this action, Defendant IEnergizer Holdings Limited is subject to and must abide by 15 U.S.C. § 1692 *et seq.*

160. Defendant IEnergizer Holdings Limited engaged in an act or omission prohibited under 15 U.S.C. § 1692(d) by willfully engaging in conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.

161. Defendant IEnergizer Holdings Limited engaged in an act or omission prohibited under 15 U.S.C. § 1692(d)(5) by causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.

162. Defendant IEnergizer Holdings Limited engaged in an act or omission prohibited under 15 U.S.C. § 1692(f) by using unfair and unconscionable means to collect or attempt to collect any debt.

**WHEREFORE,** Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against for statutory damages, punitive damages, actual damages, costs, interest, attorney fees and any other such relief the court may deem just and proper.

## COUNT III
### (Violation of the FCCPA Against IEnergizer Holdings Limited)

163.    Plaintiff incorporates Paragraphs one hundred one (101) through one hundred fifty one (151).

164.    At all times relevant to this action Defendant IEnergizer Holdings Limited is subject to and must abide by the law of Florida, including Florida Statute § 559.72.

165.    Defendant IEnergizer Holdings Limited has violated Florida Statute § 559.72(7) by willfully communicating with the debtor or any member of her family with such frequency as can reasonably be expected to harass the debtor or her family.

166.    Defendant IEnergizer Holdings Limited has violated Florida Statute § 559.72(7) by willfully engaging in other conduct which can reasonably be expected to abuse or harass the debtor or any member of her  family.

167.    Defendant IEnergizer Holdings Limited has violated Florida Statute § 559.72(9) by attempting to enforce a debt when Defendant IEnergizer Holdings Limited knows that the debt is not legitimate or assert the existence of some legal right when Defendant IEnergizer Holdings Limited knows that right does not exist.

168.    Defendant IEnergizer Holdings Limited's actions have directly and proximately resulted in Plaintiff's prior and continuous sustaining of damages as described by Florida Statute §559.77.

**WHEREFORE,** Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant IEnergizer Holdings Limited for statutory damages, punitive damages, actual damages, costs, interest, attorney fees, enjoinder of future illegal conduct, and any other such relief the court may deem just and proper.

## COUNT IV
**(Invasion of Privacy – Intrusion Upon Seclusion Against IEnergizer Holdings Limited)**

169.    Plaintiff incorporates Paragraphs one hundred one (101) through one hundred fifty one (151).

170.    Defendant IEnergizer Holdings Limited through its collection conduct, has repeatedly and intentionally invaded Plaintiff's privacy.

171.    All of the calls made to Plaintiff's cell phone by Defendant IEnergizer Holdings Limited and its agents using an automatic telephone dialing system were made in violation of the TCPA, and were unreasonable and highly offensive invasions of Plaintiff's right to privacy.

172.    Defendant IEnergizer Holdings Limited's persistent autodialed calls to her cellular phone eliminated Plaintiff's right to be left alone.

173.    Defendant IEnergizer Holdings Limited's autodialed collection calls disrupted Plaintiff's privacy, disrupted Plaintiff's sleep, disrupted Plaintiff during mealtimes, disrupted Plaintiff during her work, and continually frustrated and annoyed Plaintiff.

174.    These persistent autodialed collection calls eliminated the peace and solitude that the Plaintiff would have otherwise had in Plaintiff's home and anywhere else Plaintiff went with her cellular phone.

175.    By calling her cellular phone, Plaintiff had no escape from these collection calls either in her home or when she left the home.

176.    By persistently autodialing Plaintiff's cellular phone without prior express consent, Defendant IEnergizer Holdings Limited invaded Plaintiff's right to privacy, as legally protected by the TCPA, and caused Plaintiff to suffer concrete and particularized harm.

177.     Defendant IEnergizer Holdings Limited's harassing collection conduct and tactic of repeatedly auto dialing Plaintiff to her cellular phone after requests to stop is highly offensive to a reasonable person.

178.     Defendant IEnergizer Holdings Limited intentionally intruded upon Plaintiff's solitude and seclusion.

179.     As a result of Defendant IEnergizer Holdings Limited's action or inaction, Plaintiff has been damaged.

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant IEnergizer Holdings Limited for statutory damages, punitive damages, actual damages and any other such relief the court may deem just and proper.

### <u>COUNT V</u>
**(Intentional Infliction of Emotional Distress Against IEnergizer Holdings Limited)**

180.     Plaintiff incorporates Paragraph one hundred one (101) through one hundred fifty one (151).

181.     The harassing and abusive conduct, including the repetitive robocalls to Plaintiff, have caused severe emotional harm and distress, embarrassment, aggravation, and other losses.

182.     It is beyond the pale of decency to robocall anybody 150 times.

183.     The damage to the Plaintiff was and is immense.  The Plaintiff had a stunned sense of helplessness because she could not stop the calls.

184.      To call somebody this amount of time is inhumane.

185.     It is utterly uncivilized to robocall someone 150 times.

186.     If a person called another person 150 times, the caller would most likely be in prison for criminal harassment.

23

187. This is especially true if the caller continued to make the calls after being told to stop and never had permission to call in the first place.

188. The calls to Plaintiff by Defendant IEnergizer Holdings Limited are harassing, aggravating and highly intrusive.

**WHEREFORE,** Plaintiff respectfully requests that judgment be entered against Defendant IEnergizer Holdings Limited for punitive damages and such other and further relief as the Court shall deem just and proper.

## FACTUAL ALLEGATIONS REGARDING ALORICA, INC.

189. Plaintiff is a natural person and citizen of the State of Florida, residing in Englewood, Florida.

190. Plaintiff is a "consumer" as defined in Florida Statute § 559.55(8) 15 U.S.C. § 1692(a)(3).

191. Plaintiff is an "alleged debtor."

192. Plaintiff is the "called party." *See Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014); *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 (11th Cir. 2014).

193. Defendant Alorica, Inc. is a corporation with its principal place of business in Irvine, California, and regularly conducts business in Florida.

194. Defendant Alorica, Inc. is a "debt collector" as defined by Florida Statute § 559.55(7) and 15 U.S.C. § 1692(a)(6).

195. The debt that is the subject matter of this complaint is a "consumer debt" as defined by Florida Statute § 559.55(6) and 15 U.S.C. § 1692(a)(5).

196. Plaintiff is the regular user and carrier of the cellular telephone number at issue, (941) 249-1792.

197. Plaintiff was the "called party" during each phone call subject to this lawsuit.

198. Defendant Alorica, Inc. intentionally harassed and abused Plaintiff on numerous occasions by calling several times during one day, and on back to back days, with such frequency as can reasonably be expected to harass.

199. Defendant Alorica, Inc. did not have the "express consent" of the Defendant Alorica, Inc. to call her cell phone.

200. "Express consent" is narrowly construed by the Courts.

201. It is the Defendant Alorica, Inc.'s burden to prove they had "express consent" per the TCPA to call the Plaintiff on her cell phone using an "automatic telephone dialing system" (ATDS).

202. It is the Defendant Alorica, Inc.'s burden to prove they had "express consent" per the TCPA to call the Plaintiff on her cell phone using an ATDS for each account they were calling on.

203. Defendant Alorica, Inc. was put on notice Plaintiff did not want the Defendant Alorica, Inc. contacting her.

204. Defendant Alorica, Inc. did not have the express consent of the Plaintiff to call her on the accounts they called her.

205. Plaintiff expressly revoked any express consent Defendant Alorica, Inc. may have mistakenly believed it had for placement of telephone calls to Plaintiff's aforementioned cellular telephone number by the use of an ATDS or a pre-recorded or artificial voice.

206.    Defendant Alorica, Inc. attempted to collect a debt from the Plaintiff by this campaign of telephone calls.

207.    Defendant Alorica, Inc. made at least one call to (941) 249-1792.

208.    Defendant Alorica, Inc. made at least one call to (941) 249-1792 using an ATDS.

209.    Defendant Alorica, Inc. made at least ten (10) calls to (941) 249-1792.

210.    Defendant Alorica, Inc. made at least ten (10) calls to (941) 249-1792 using an ATDS.

211.    Defendant Alorica, Inc. made at least fifty (50) calls to (941) 249-1792.

212.    Defendant Alorica, Inc. made at least fifty (50) calls to (941) 249-1792 using an ATDS.

213.    Defendant Alorica, Inc.made at least one-hundred fifty (150) calls to (941) 249-1792.

214.    Defendant Alorica, Inc. made at least one-hundred fifty (150) calls to (941) 249-1792 using an ATDS.

215.    Each call the Defendant Alorica, Inc. made to (941) 249-1792 in the last four years was made using an ATDS.

216.    Each call the Defendant Alorica, Inc. made to the Plaintiff's cell phone was done so without the "express permission" of the Plaintiff.

217.    Defendant Alorica, Inc. has called other people's cell phones without their express consent.

218.    Each call the Defendant Alorica, Inc. made to the Plaintiff was made using an ATDS, which has the capacity to store or produce telephone numbers to be called, without human

intervention, using a random or sequential number generator; and to dial such numbers as specified by 47 U.S.C § 227(a)(1).

219.    The calls at issue were placed by the Defendant Alorica, Inc. using a "prerecorded voice," as specified by the TCPA, 47 U.S.C. § 227(b)(1)(A).

220.    Plaintiff repeatedly requested the Defendant Alorica, Inc. to stop calling her cell phone, however, the Defendant Alorica, Inc. continued to make calls.

221.    Defendant Alorica, Inc. has admitted to calling cell phones using an ATDS after that person asked for the calls to stop.

222.    Plaintiff's conversations with the Defendant Alorica, Inc. putting them on notice that they did not want more phone calls were ignored.

223.    Defendant Alorica, Inc. has recorded at least one conversation with the Plaintiff.

224.    Defendant Alorica, Inc. has recorded numerous conversations with the Plaintiff.

225.    Defendant Alorica, Inc. has made approximately one-hundred fifty (150) calls to Plaintiff's aforementioned cellular telephone number from about July 10, 2015 through July 31, 2015, which will be established exactly once Defendant Alorica, Inc. turns over their dialer records.

226.    Despite actual knowledge of their wrongdoing, the Defendant Alorica, Inc. continued the campaign of abusive robocalls.

227.    Defendant Alorica, Inc. has been sued in federal court where the allegations include: calling an individual using an ATDS after the individual asked for the calls to stop.

228.    By effectuating these unlawful phone calls, Defendant Alorica, Inc. has caused Plaintiff the very harm that Congress sought to prevent—namely, a "nuisance and invasion of privacy."

229. Defendant Alorica, Inc.'s aggravating and annoying phone calls trespassed upon and interfered with Plaintiff's rights and interests in her cellular telephone and cellular telephone line, by intruding upon Plaintiff's seclusion.

230. Defendant Alorica, Inc.'s phone calls harmed Plaintiff by wasting her time.

231. Moreover, "wireless customers [like Plaintiff] are charged for incoming calls whether they pay in advance or after the minutes are used."  In re: *Rules Implementing the TCPA of 1991*, 23 FCC Rcd 559, 562 (2007).  Defendant Alorica, Inc.'s phone calls harmed Plaintiff by depleting the battery life on her cellular telephone, and by using minutes allocated to Plaintiff by her cellular telephone service provider.

232. Defendant Alorica, Inc.'s corporate policy and procedures are structured as to continue to call individuals like the Plaintiff, despite these individuals revoking any consent the Defendant Alorica, Inc. may have mistakenly believed it had.

233. Defendant Alorica, Inc.'s corporate policy and procedures provided no means for the Plaintiff to have her aforementioned cellular number removed from the call list.

234. Defendant Alorica, Inc. has a corporate policy of using an ATDS or a prerecorded or artificial voice message to collect debts from individuals such as Plaintiff for its financial benefit.

235. Plaintiff expressly revoked any consent Defendant Alorica, Inc. may have mistakenly believed it had for placement of telephone calls to Plaintiff's aforementioned cellular telephone by the use of an ATDS or a pre-recorded or artificial voice immediately upon Defendant Alorica, Inc.'s placement of the calls.  Making money while breaking the law is considered an incentive to continue violating the TCPA and other state and federal statutes.

236. Defendant Alorica, Inc. never had the Plaintiff's expressed consent for placement of telephone calls to her aforementioned cellular telephone by the use of an ATDS or a pre-recorded or artificial voice.

237. None of Defendant Alorica, Inc.'s telephone calls placed to Plaintiff were for "emergency purposes" as specified in 47 U.S.C. §227(b)(1)(A).

238. Defendant Alorica, Inc. violated the TCPA, FDCPA and FCCPA with respect to the Plaintiff.

239. Defendant Alorica, Inc. willfully or knowingly violated the TCPA with respect to the Plaintiff.

**COUNT I**
**(Violation of the TCPA Against Alorica, Inc.)**

240. Plaintiff incorporates Paragraphs one hundred eighty nine (189) through two hundred thirty nine (239).

241. Defendant Alorica, Inc. willfully violated the TCPA with respect to the Plaintiff each time they called the Plaintiff after she revoked her consent to be called by them using an ATDS or pre-recorded voice.

242. Defendant Alorica, Inc. knowingly violated the TCPA with respect to the Plaintiff, especially for each of the auto-dialed calls made to Plaintiff's cellular telephone after Plaintiff revoked her consent to be called by them using an ATDS or pre-recorded voice.

243. Defendant Alorica, Inc. repeatedly placed non-emergency telephone calls to the wireless telephone number of Plaintiff using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

244.     As a result of Defendant Alorica, Inc.'s illegal conduct, Plaintiff suffered actual damages and, under § 227(b)(3)(B), is entitled to, inter alia, a minimum of $500.00 in damages for each such violation of the TCPA.

245.     Plaintiff is also entitled to, and does, seek injunctive relief prohibiting Defendant, Alorica, Inc., from violating the TCPA in the future.

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant Alorica, Inc. for statutory damages, punitive damages, actual damages and any other such relief the court may deem just and proper.

## COUNT II
### (Violation of the FDCPA Against Alorica, Inc.)

246.     Plaintiff incorporates Paragraphs one hundred eighty nine (189) through one two hundred thirty nine (239).

247.     At all times relevant to this action, Defendant Alorica, Inc. is subject to and must abide by 15 U.S.C. § 1692 *et seq.*

248.     Defendant Alorica, Inc. engaged in an act or omission prohibited under 15 U.S.C. § 1692(d) by willfully engaging in conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.

249.      Defendant Alorica, Inc. engaged in an act or omission prohibited under 15 U.S.C. § 1692(d)(5) by causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.

250.     Defendant Alorica, Inc. engaged in an act or omission prohibited under 15 U.S.C. § 1692(f) by using unfair and unconscionable means to collect or attempt to collect any debt.

251.

**WHEREFORE,** Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against for statutory damages, punitive damages, actual damages, costs, interest, attorney fees and any other such relief the court may deem just and proper.

**COUNT III**
**(Violation of the FCCPA Against Alorica, Inc.)**

252. Plaintiff incorporates Paragraphs one hundred eighty nine (189) through two hundred thirty nine (239).

253. At all times relevant to this action Defendant Alorica, Inc. is subject to and must abide by the law of Florida, including Florida Statute § 559.72.

254. Defendant Alorica, Inc. has violated Florida Statute § 559.72(7) by willfully communicating with the debtor or any member of her family with such frequency as can reasonably be expected to harass the debtor or her family.

255. Defendant Alorica, Inc. has violated Florida Statute § 559.72(7) by willfully engaging in other conduct which can reasonably be expected to abuse or harass the debtor or any member of her  family.

256. Defendant Alorica, Inc. has violated Florida Statute § 559.72(9) by attempting to enforce a debt when Defendant Alorica, Inc. knows that the debt is not legitimate or assert the existence of some legal right when Defendant Alorica, Inc. knows that right does not exist.

257. Defendant Alorica, Inc.'s actions have directly and proximately resulted in Plaintiff's prior and continuous sustaining of damages as described by Florida Statute §559.77.

**WHEREFORE,** Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant Alorica, Inc. for statutory damages, punitive damages, actual damages, costs, interest, attorney fees, enjoinder of future illegal conduct, and any other such relief the court may deem just and proper.

## COUNT IV
### (Invasion of Privacy – Intrusion Upon Seclusion Against Alorica, Inc.)

258.     Plaintiff incorporates Paragraphs one hundred eighty nine (189) through two hundred thirty nine (239).

259.     Defendant Alorica, Inc. through its collection conduct, has repeatedly and intentionally invaded Plaintiff's privacy.

260.     All of the calls made to Plaintiff's cell phone by Defendant Alorica, Inc. and its agents using an automatic telephone dialing system were made in violation of the TCPA, and were unreasonable and highly offensive invasions of Plaintiff's right to privacy.

261.     Defendant Alorica, Inc.'s persistent autodialed calls to her cellular phone eliminated Plaintiff's right to be left alone.

262.     Defendant Alorica, Inc.'s autodialed collection calls disrupted Plaintiff's privacy, disrupted Plaintiff's sleep, disrupted Plaintiff during mealtimes, disrupted Plaintiff during her work, and continually frustrated and annoyed Plaintiff.

263.     These persistent autodialed collection calls eliminated the peace and solitude that the Plaintiff would have otherwise had in Plaintiff's home and anywhere else Plaintiff went with her cellular phone.

264.     By calling her cellular phone, Plaintiff had no escape from these collection calls either in her home or when she left the home.

265.     By persistently autodialing Plaintiff's cellular phone without prior express consent, Defendant Alorica, Inc. invaded Plaintiff's right to privacy, as legally protected by the TCPA, and caused Plaintiff to suffer concrete and particularized harm.

266. Defendant Alorica, Inc.'s harassing collection conduct and tactic of repeatedly auto dialing Plaintiff to her cellular phone after requests to stop is highly offensive to a reasonable person.

267. Defendant Alorica, Inc. intentionally intruded upon Plaintiff's solitude and seclusion.

268. As a result of Defendant Alorica, Inc.'s action or inaction, Plaintiff has been damaged.

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant Alorica, Inc. for statutory damages, punitive damages, actual damages and any other such relief the court may deem just and proper.

## COUNT V
### (Intentional Infliction of Emotional Distress Against Alorica, Inc.)

269. Plaintiff incorporates Paragraph one hundred eighty nine (189) through one two hundred thirty nine (239).

270. The harassing and abusive conduct, including the repetitive robocalls to Plaintiff, have caused severe emotional harm and distress, embarrassment, aggravation, and other losses.

271. It is beyond the pale of decency to robocall anybody 150 times.

272. The damage to the Plaintiff was and is immense. The Plaintiff had a stunned sense of helplessness because she could not stop the calls.

273. To call somebody this amount of time is inhumane.

274. It is utterly uncivilized to robocall someone 150 times.

275. If a person called another person 150 times, the caller would most likely be in prison for criminal harassment.

276. This is especially true if the caller continued to make the calls after being told to stop and never had permission to call in the first place.

277. The calls to Plaintiff by Defendant Alorica, Inc. are harassing, aggravating and highly intrusive.

**WHEREFORE,** Plaintiff respectfully requests that judgment be entered against Defendant Alorica, Inc. for punitive damages and such other and further relief as the Court shall deem just and proper.

Respectfully submitted,

Heather H. Jones, Esq.
Heather H. Jones, Esq.
Florida Bar No. 0118974
William "Billy" Peerce Howard, Esq.
Florida Bar No. 0103330
The Consumer Protection Firm, PLLC
4030 Henderson Boulevard
Tampa, FL 33629
Telephone: (813) 500-1500, ext. 205
Facsimile: (813) 435-2369
Heather@TheConsumerProtectionFirm.com
Billy@TheConsumerProtectionFirm.com
*Attorney for Plaintiff*